**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION**

**CHARLIE GLASPER**                                                                                **PLAINTIFF**

**v.**                                       **Case No. 2:15-cv-00186-KGB**

**CITY OF HUGHES, ARKANSAS,** *et al.***,**                                    **DEFENDANTS**

**DEFAULT ORDER**

Before the Court is plaintiff Charlie Glasper's oral motion for default judgment against defendant James Wright, Jr., in his individual capacity (Dkt. Nos. 56, 58, 60, 61). Mr. Wright has not responded to Mr. Glasper's motion, and the time to respond has passed. For the reasons set forth below, the Court grants Mr. Glasper's motion. Based on the Court's determinations, the Court directs that the Clerk enter default against separate defendant James Wright, Jr., in his individual capacity pursuant to Federal Rule of Civil Procedure 55(a). Upon the Clerk's entry of default, absent good cause shown, the Court intends to enter a separate default judgment consistent with the terms of this Order.

      **I.**        **Factual And Procedural Background**

The Court draws on the factual background already established in this case. On November 22, 2014, Mr. Glasper was injured during an encounter with officers of the City of Hughes Police Department in Hughes, Arkansas. On November 18, 2015, Mr. Glasper filed a complaint against Mr. Wright, among other defendants, alleging federal and state law causes of action (Dkt. No. 1). Mr. Wright through counsel answered Mr. Glasper's complaint (Dkt. No. 13).

On March 2, 2016, Mr. Glasper filed an amended complaint pursuant to 42 U.S.C. § 1983 and the Arkansas Civil Rights Act ("ACRA"), Arkansas Code Annotated § 16-123-101, *et seq.* (Dkt. No. 18). Mr. Glasper alleges that his rights as secured by the Fourth, Fifth, Eighth, and

Fourteenth Amendments to the Constitution of the United States were violated (*Id.*). In his amended complaint, Mr. Glasper named five defendants along with three John Doe defendants who have yet to be identified: the city of Hughes, Arkansas; Lawrence Owens, individually and in his official capacity as the Mayor of the City of Hughes; Dustin McCluskey, individually and in his official capacity as the former Chief of Police for the City of Hughes; Mr. Wright; and James Wright, Sr., individually and in his official capacity as a police officer for the City of Hughes (*Id.*). Mr. Wright through counsel answered Mr. Glasper's amended complaint (Dkt. No. 20).

The City defendants moved for summary judgment (Dkt. No. 27), and the Wright defendants, including but not limited to Mr. Wright, moved for summary judgment (Dkt. No. 30). The Court granted the City defendants' motion for summary judgment in its entirety and granted, in part, and denied, in part, the Wright defendants' motion for summary judgment (Dkt. No. 48). The Court denied Mr. Wright's motion for summary judgment on Mr. Glasper's Fourth Amendment, Fourteenth Amendment, and pendent state assault and battery claims against Mr. Wright in his individual capacity and permitted Mr. Glasper to proceed with those claims (*Id.*, at 45-46).[1]

By Order entered August 30, 2017, the Court set the trial in this matter for the week of April 9, 2018 (Dkt. No. 49). On November 9, 2017, counsel for Mr. Wright moved to withdraw from representing Mr. Wright (Dkt. No. 50). In his motion, counsel explained that his numerous attempts to reach Mr. Wright were unsuccessful and that Mr. Wright was not in touch with his counsel to prepare meaningfully for trial (*Id.*). The Court granted the motion, permitting counsel

---

[1] Mr. Glasper did not timely seek to identify and substitute named individuals for the John Doe defendants, nor did Mr. Glasper timely serve these defendants with the complaint or amended complaint. *See* Fed. R. Civ. P. 4(m). Therefore, the Court dismisses without prejudice Mr. Glasper's claims against the John Doe defendants.

for Mr. Wright to withdraw and directing counsel to provide a copy of the Order to Mr. Wright (Dkt. No. 51).  In the Order, the Court directed Mr. Wright to inform the Court within 30 days whether he had obtained new counsel or intended to proceed *pro se*, stayed the matter for 30 days only, and reminded Mr. Wright of his obligations pursuant to Local Rule 5.5(c)(2) (*Id.*).  Mr. Wright did not comply with the Court's Order.

As the April 9, 2018, trial date approached, Mr. Glasper filed his pretrial disclosure sheet (Dkt. No. 53).  Mr. Wright did not.  On March 29, 2018, the Court sent correspondence to Mr. Wright informing him of the scheduled trial date, inquiring of his intention with respect to retaining counsel or proceeding *pro se*, and informing him of the possibility of default judgment being entered for failure to defend against the action (Dkt. No. 54, at 2-5).  On April 4, 2018, the Court entered notice setting a pretrial conference for April 5, 2018 (Dkt. No. 54).  Mr. Glasper appeared through counsel, but Mr. Wright did not appear at the pretrial conference (Dkt. No. 55).  On April 9, 2018, the Court convened for the scheduled trial in this matter (Dkt. No. 56).  Mr. Glasper appeared through counsel, but Mr. Wright did not appear at the scheduled trial (*Id.*).

Accordingly, on April 9, 2018, Mr. Glasper made an oral motion for default judgment (*Id.*). On April 26, 2018, the Court entered notice for a status conference to be conducted May 1, 2018 (Dkt. No. 57).  Mr. Glasper through counsel participated in that status conference; Mr. Wright did not participate (Dkt. No. 58).  The Court held the status conference on May 1, 2018, regarding the procedure for resolving Mr. Glasper's oral motion for default judgment (Dkt. No. 58).

On August 20, 2019, the Court entered an Order directing Ms. Glasper to file a status report informing the Court about the following issues:  (1) whether Mr. Glasper intended to move for default judgment as to liability and compensatory damages; (2) whether Mr. Glasper intended to submit affidavits to support his request for compensatory damages; (3) whether Mr. Glasper had

withdrawn his jury demand with regard to his request for punitive damages; and (4) if Mr. Glasper intended to make any such filings, when he anticipated such filings would be made (Dkt. No. 59, at 1-2). Mr. Glasper filed a status report on August 26, 2019 (Dkt. No. 60).

In that status report, Mr. Glasper states that he intends to submit his motion for default judgment as to liability and damages with affidavits attached including the amount of his damages after receiving his final total of medical expenses from his most recent treatment (*Id.*). Mr. Glasper states that no hearing will be necessary for the Court to consider his motion for default judgment and affidavits verifying his damages (*Id.*). Additionally, Mr. Glasper stands on his withdrawal of his jury demand for both compensatory and punitive damages (*Id.*).

On February 27, 2020, Mr. Glasper submitted an affidavit regarding his damages (Dkt. No. 61). Mr. Glasper avers that he suffered injuries to his shoulder, neck, and head during his incident with Mr. Wright (*Id.*, at 1). In 2016, Mr. Glasper underwent shoulder surgery and therapy (*Id.*). Mr. Glasper previously had a neck surgery, and the 2016 pain was attributed to a reinjury of that site (*Id.*). In October 2018, Mr. Glasper underwent another neck surgery to repair his reinjured neck and alleviate the pain; he subsequently underwent therapy, as well (*Id.*). In March 2019, Drs. Shelton and Crosby released Mr. Glasper from their care stating that he had reached maximum medical improvement and that no further appointments were needed (*Id.*). Mr. Glasper states that he has incurred damages in excess of $121,177.30 in medical expenses and has lost approximately five years' worth of wages (*Id.*). Prior to the encounter underlying this action, Mr. Glasper's earnings were as follows: $30,576.00 in 2011; $31,754.00 in 2012; $29,328.00 in 2013; and $26,000.00 (*Id.*). Subsequent to the encounter, Mr. Glasper's earnings were as follows: $21,511.00 in 2015; $25,683.00 in 2016; $23,645.00 in 2017; and $9,442.00 in 2018 (*Id.*). Mr. Glasper states that he had to reapply for his job due to the length of recovery for his last neck

surgery (*Id.*, at 1-2).  Mr. Glasper asks the Court to award his medical expenses incurred, lost earnings, and $750,000.00 for pain, suffering, and mental anguish (*Id.*, at 2).  Mr. Glasper attached a medical expense summary updated as of January 28, 2020, itemizing a total of $121,177.30 in medical expenses (*Id.*, at 3-7).

**II.     Legal Standard**

Rule 55 of the Federal Rules of Civil Procedure contemplates a two-step process for the entry of default judgments. *Fraserside IP L.L.C. v. Youngtek Solutions Ltd.*, 796 F. Supp. 2d 946, 951 (N.D. Iowa 2011) (citation and internal quotation marks omitted).  First, pursuant to Rule 55(a), the party seeking a default judgment must have the clerk of court enter the default by submitting the required proof that the opposing party has failed to plead or otherwise defend.  *Id.* Second, pursuant to Rule 55(b), the moving party may seek entry of judgment on the default under either subdivision (b)(1) or (b)(2) of the rule.  *Id.*  Entry of default under Rule 55(a) must precede a grant of default judgment under Rule 55(b).  *Id.*

"[E]ntry of a default judgment . . . [is] committed to the sound discretion of the district court.  Default judgments, however, are not favored by the law." *United States v. Harre*, 983 F.2d 128, 130 (8th Cir. 1993) (internal citation omitted).  Once a defendant is in default, the factual allegations of the complaint, "except those relating to the amount of damages, will be taken as true."  10A Charles A. Wright, *et al.*, *Federal Practice and Procedure* § 2688.1 (4th ed. 2018) (West) (citations omitted).  However, the court must ensure that the "unchallenged facts constitute a legitimate cause of action" prior to entering final judgment.  *See Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010) (quoting 10A Charles A. Wright, *et al.*, *Federal Practice and Procedure* § 2688 (3d ed.)).

In determining whether to enter default judgment, the Court may consider:

>the amount of money potentially involved; whether material issues of fact or issues of substantial public importance are at issue; whether the default is largely technical; whether plaintiff has been substantially prejudiced by the delay involved; and whether the grounds for default are clearly established or are in doubt. Furthermore, the court may consider how harsh an effect a default judgment might have; or whether the default was caused by a good-faith mistake or by excusable or inexcusable neglect on the part of the defendant.

10A Charles A. Wright, *et al.*, *Federal Practice & Procedure*, § 2685 (4th ed. 2018) (West) (citations omitted) (collecting cases). "Default judgment for failure to defend is appropriate when the party's conduct includes willful violations of court rules, contumacious conduct, or intentional delays. On the other hand, default judgment is not an appropriate sanction for a marginal failure to comply with time requirements." *Ackra Direct Mktg. Corp. v. Fingerhut Corp.*, 86 F.3d 852, 856 (8th Cir. 1996) (internal citations and quotation marks omitted).

### III.   Discussion

#### A.   Entering Default

Mr. Wright was represented by counsel for much of the litigation, answered the complaint and amended complaint, and filed a motion for summary judgment. As a result, Mr. Wright did defend against Mr. Glasper's claims, and the Court is not required to enter a default judgment against Mr. Wright. *See Weitz Co. LLC v. MacKenzie House, LLC*, 665 F.3d 970, 978 (8th Cir. 2012); *Harre,* 983 F.2d at 130 ("Because [the party] filed an answer . . . he indicated a desire to defend against the action."); *cf. Ackra Direct Mktg.,* 86 F.3d at 857 (stating it is within the district court's discretion to enter default judgment even after filing of answer if party's later "conduct includes 'willful violations of court rules, contumacious conduct, or intentional delays.'" (citation omitted)). Further, the Eighth Circuit has determined that choosing not to appear for trial, especially after defeating a motion to dismiss a counterclaim, does not necessarily constitute the

"willful violation" of court rules that places a defendant in default. *See Weitz*, 665 F.3d at 978; *Harre,* 983 F.2d at 130.

Here, Mr. Wright stopped communicating with his counsel months before trial, ultimately resulting in his counsel's filing a motion to withdraw and explaining those circumstances to the Court. After granting his counsel's motion to withdraw, the Court directed Mr. Wright to inform the Court of his intent with respect to retaining new counsel or proceeding *pro se*, and Mr. Wright failed to comply with the Court's Order and failed to respond to the Court's written correspondence. Mr. Wright did not abide by the Court's deadlines set forth in the Amended Final Scheduling Order. He did not file pretrial disclosures. He did not appear for a pretrial conference, and he did not appear for trial. In a letter sent to Mr. Wright prior to trial, the Court explained the possible consequences for such conduct. Mr. Wright was on notice of the potential for a default judgment to be entered against him.

If a party fails to appear at a pretrial conference or fails to obey a scheduling or pretrial order, the Court "may issue any just orders," which includes sanctioning a party. Fed. R. Civ. P. 16(f)(1)(A), (C); *see also Nick v. Morgan's Foods, Inc.*, 270 F.3d 590, 595-96 (8th Cir. 2001) (stating "[d]istrict courts have explicit authority to require pretrial conferences" and "Rule 16(f) expressly permits a judge to impose any other sanction the judge deems appropriate"). Available sanctions include, but are not limited to, prohibiting a party from "opposing designated claims," "dismissing the action," "striking pleadings," and "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(ii)-(vii); *see also Chrysler Corp. v. Carey*, 186 F.3d 1016, 1020-21 (8th Cir. 1999) (citation omitted) (stating, if "default judgment lies within the spectrum of appropriate sanctions," the Eighth Circuit will "not substitute our own judgment for

that of the district court even though we may have chosen a different sanction had we been standing in the shoes of the trial court.").

Even after Mr. Wright failed to appear for trial, the Court issued notice and conducted a status conference regarding Mr. Glasper's oral motion for default judgment. Mr. Wright failed to appear at the status conference, and he has not made any further filings with the Court despite there being no indication of returned mail or correspondence directed to Mr. Wright. Under the circumstances of this case, the Court determines that default judgment is appropriate because Mr. Wright, the party against whom the judgment is sought, has engaged in "'willful violations of court rules, contumacious conduct, or intentional delays.'" *Forsythe v. Hales*, 255 F.3d 487, 490 (8th Cir. 2001) (quoting *Ackra Direct Mktg.*, 86 F.3d at 856); *Ackra Direct Mktg.*, 86 F.3d at 856 (finding a company's failure to respond to orders, comply with pretrial requirements, and attend the pretrial hearing were grounds for default judgment); *Enslein as Tr. for Xurex, Inc. v. Di Mase*, No. 16-09020-CV-W-ODS, 2020 WL 974872, at *4 (W.D. Mo. Feb. 28, 2020); *Armagost v. United States*, No. 07-CV-3240, 2010 WL 829178, at *1-2 (D. Neb. Mar. 4, 2010); *Wood Re New Franchise Corp. v. Gibson*, No. 06-CV-3312-GAF, 2008 WL 11338458, at *1 (W.D. Mo. June 17, 2008).

### B.     Liability

Once a defendant is in default, the factual allegations of the complaint, "except those relating to the amount of damages, will be taken as true." 10A Charles A. Wright, *et al.*, *Federal Practice and Procedure* § 2688.1 (4th ed. 2018) (West) (citations omitted). "[W]hen a default judgment is entered on a claim for an indefinite or uncertain amount of damages, facts alleged in the complaint are taken as true, except facts relating to the amount of damages, which must be proven in a supplemental hearing or proceeding." *Am. Red Cross v. Cmty. Blood Ctr.*, 257 F.3d

859, 864 (8th Cir. 2001) (internal quotation omitted).  However, the Court must ensure that the "unchallenged facts constitute a legitimate cause of action" prior to entering final judgment.  *See Murray*, 595 F.3d at 871 (quoting 10A Charles A. Wright, *et al.*, *Federal Practice and Procedure* § 2688 (3d ed.)).

In his amended complaint, Mr. Glasper alleges constitutional claims against Mr. Wright, individually, and pendant state law tort claims against him.  Specifically, Mr. Glasper alleges that Mr. Wright committed an unlawful assault and battery upon him, subjected Mr. Glasper to the intentional infliction of emotional distress, committed negligence and gross negligence, engaged in false arrest and imprisonment, carried out an abuse of process, engaged in a conspiracy, committed other torts, and committed *prima facie* tort (Dkt. No. 18, ¶ 27).

Because he defaulted, Mr. Wright has "admitted" every "well pleaded allegation" in the complaint.  *See Murray*, 595 F.3d at 871 (finding that, upon default, factual allegations in a complaint are taken as true).  Generally, Mr. Glasper alleges in his amended complaint that, on November 22, 2014, he had an encounter with officers of the City of Hughes Police Department in Hughes, Arkansas.  Specifically, Mr. Glasper alleges that he:

> was attending a wake for a relative in Hughes, St. Francis, County, Arkansas when officers showed up at the location.  As Officer, James Wright, Jr., Badge #406, approached Plaintiff, he advised Plaintiff that he should "move away" or else he would be pepper sprayed, although at the time the Plaintiff had done nothing to interfere with the officers['] governmental responsibilities.  Before Plaintiff could remove himself from the Officers presence, Officer James Wright, Jr., Badge #406, began spraying him excessively with pepper spray, threw him to the ground, knee'd him in the back, yanked both arms behind his back placing handcuffs on him, which cuffs were placed so tight that Plaintiff sustained injury and damages to his wrists, after which Plaintiff was thrown into the police car.

(Dkt. No. 18, ¶ 12).

Mr. Glasper also maintains that he:

> was violently thrown into the police car by Officer James Wright, Jr., Badge #406, he was not seatbelted in, although he was handcuffed behind his back, and Officer James Wright, Jr., Badge #406, failed to shut the door to the police car, left the scene in an excessive rate of speed, made a sharp turn around a corner at which time Plaintiff was violently thrown from the vehicle landing on the pavement, all the while his hands being handcuffed behind his back, which incident caused Plaintiff severe and permanent injuries to his head, shoulders, eyes, back, along with other injuries to his person; additionally, he was knocked unconscious by the impact, sustaining a traumatic brain injury.
>
> That after being violently thrown from the vehicle, Officer James Wright, Jr., Badge #406, stopped his car, ordered Plaintiff to be unhandcuffed so as to attempt to hide the true facts and circumstances and then began creating a story/fabrication that Plaintiff had jumped from the vehicle.
>
> That at the time Plaintiff was brutally and viciously attacked by Officer James Wright, Jr., Badge #406, he was not resisting arrest in any shape, form or fashion and had complied with all orders of law enforcement. Additionally, Plaintiff had been handcuffed and was detained and "under arrest" for all purposes at the time in which he was attached by Officer James Wright, Jr., Badge #406.

(*Id.*, ¶¶ 13-15). Mr. Glasper maintains that he "was never officially charged with any criminal offense but was detained by the Hughes Police Department." (*Id.*, ¶ 16).

Mr. Glasper further asserts in his amended complaint:

> That as a direct and proximate result of the misconduct described above, Plaintiff, Charlie Glasper has incurred medical expenses, hospital expenses, and will incur future medical expenses; he has suffered excruciating pain, suffering and mental anguish and will in the future experience pain, suffering and mental anguish from the consequences of his injuries; and his injuries are permanent in nature, and for all of which he should have and recover judgment against the Defendants and each of them.

(*Id.*, ¶ 18).

Mr. Glasper alleges, under 42 U.S.C. § 1983, that Mr. Wright acting under color of state law violated his Fourth, Fifth, Fourteenth, and Eighth Amendment rights (*Id.*, ¶¶ 23-24). He also alleges state law causes of action, including but not limited to assault and battery against Mr. Wright (*Id.*, ¶¶ 27-28). The Court examined these claims when ruling on defendants' motion for summary judgment (Dkt. No. 48). The unchallenged facts set forth in the amended complaint,

deemed admitted by virtue of Mr. Wright's default, are sufficient to state claims against Mr. Wright upon which Mr. Glasper is entitled to recover.

### C. Damages

Per Federal Rule of Civil Procedure 55(b)(2), a district court may convene a jury to decide damages, but it is only required where there is a federal statutory right to trial. *See* 10A Charles A. Wright, *et al.*, *Federal Practice and Procedure* § 2688 (4th ed. 2016) ("Neither side has a right to a jury trial on damages."). No such statutory right exists here. Mr. Glasper did request a jury trial in his complaint (Dkt. No. 18-1, ¶ 30). However, Mr. Glasper has now waived that right with respect to damages, both compensatory and punitive, in his recent status report (Dkt. No. 60). Mr. Wright did not join in the request for a jury in his answer to the amended complaint (Dkt. No. 20).

Some courts have held that Federal Rule of Civil Procedure 38(d), which states that a jury demand may be withdrawn only if the parties consent, extends to a defendant after an entry of default. *See Kormes v. Weis, Voisin & Co., Inc.*, 61 F.R.D. 608, 610 (E.D. Pa. 1974); *see also Zero Down Supply Chain Solutions, Inc. v. Global Transp. Solutions, Inc.*, 282 F.R.D. 604, 606-07 (D. Utah 2012) (jury required to determine damages because plaintiff may not unilaterally withdraw demand for a jury after default). The Court is aware of no controlling precedent on this point, and the Court declines to impose the requirement under the circumstances presented here.

The necessity of an evidentiary hearing to determine a plaintiff's damages after default is "within the sound discretion of the district court." *Stephenson v. El-Batrawi*, 524 F.3d 907, 916 (8th Cir. 2008). Regular compensatory damages may be awarded without an evidentiary hearing. *See Cutcliff v. Reuter*, 791 F.3d 875, 883 (8th Cir. 2015) ("[I]t was not an abuse of discretion to award actual damages without an evidentiary hearing."); *see also Realsongs, Univ. Music Corp. v. 3A North Park Ave. Rest Corp.*, 749 F. Supp. 2d 81, 85 (E.D.N.Y. 2010) ("In determining damages

not susceptible to simple mathematical calculations, Federal Rule 55(b)(2) gives courts discretion to determine whether an evidentiary hearing is necessary or whether to rely on detailed affidavits or documentary evidence.").

Mr. Glasper submitted an affidavit in support of his request for compensatory damages (Dkt. No. 61). The Court, having considered Mr. Glasper's allegations and sworn testimony presented by affidavit with respect to damages, determines that it is appropriate to award to Mr. Glasper:

(1) $121,177.30 in medical expenses, which amounts are supported by his affidavit (Dkt. No. 61).

(2) $37,377.00 in lost wages for the years 2015, 2016, 2017, and 2018. The Court arrives at this amount by adding the earnings Mr. Glasper reports in his affidavit for the years 2011, 2012, 2013, and 2014 and then dividing that total by four (($30,576.00 + $31,754.00 + $29,328.00 + $26,000.00) / 4) to arrive at a yearly average amount earned of $29,414.50. From that yearly average amount earned, the Court subtracted the amounts Mr. Glasper reports earning for the years 2015 ($29,414.50 - $21,511.00 = $7,903.50), 2016 ($29,414.50 - $25,683.00 = $3,731.50), 2017 ($29,414.50 - $23,645.00 = $5,769.50), and 2018 ($29,414.50 – $9,442.00 = $19,972.50) and then adding those differences ($7,903.50 + $3,713.50 + $5,769.50 + $19,972.50) to arrive at $37,377.00 in lost earnings.

(3) $250,000.00 for pain, suffering, and mental anguish. The Court arrives at this amount by exercising its discretion based on the limited information provided by Mr. Glasper in his affidavit to support the amount claimed and because Mr. Glasper admits in his affidavit that, prior to this injury, he previously had neck surgery and reports reinjuring that site in this altercation. He reports that, as of January 2019, he has had no residual problems. Taking into

account all facts and circumstances in this case, the Court determines that $250,000.00 for pain, suffering, and mental anguish is appropriate.

**IV.    Conclusion**

For these reasons, the Court directs the Clerk to enter default against separate defendant James Wright, Jr., in his individual capacity pursuant to Federal Rule of Civil Procedure 55(a). Upon the Clerk's entry of default, the Court intends to enter a separate default judgment consistent with the terms of this Order.

So ordered this 29th day of May, 2020.

*Kristine G. Baker*
Kristine G. Baker
United States District Judge